**UNITED STATES of America,**
**Appellee,**

v.

**Jose VASQUEZ, a.k.a "China Man,"**
**Defendant–Appellant.**

**Docket No. 99–1774.**

United States Court of Appeals,
Second Circuit.

Argued June 29, 2000.

Decided Sept. 26, 2001.

Joshua L. Dratel, New York, New York (Martin J. Siegel, Marshall A. Mintz, New York, New York, of counsel), for Appellant.

David C. Esseks, Assistant United States Attorney, New York, New York (Mary Jo White, United States Attorney for the Southern District of New York, Thomas Finnegan, George S. Canellos, New York, New York, of counsel), for Appellee.

Before LEVAL, PARKER, and KATZMANN, Circuit Judges.

PARKER, Circuit Judge:

Defendant–Appellant Jose Vasquez appeals from the judgment of conviction and sentence entered in the United States District Court for the Southern District of New York (Michael B. Mukasey, *Judge* ). Vasquez was convicted, following a jury trial, of one count of conspiracy to murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5); two counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); and one count of use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). Vasquez challenges his conviction on three grounds contending that (1) the district court abused its discretion in admitting certain evidence; (2) the district court impermissibly directed a verdict on the "affecting interstate or foreign commerce" element of his "Violent Crimes in Aid of Racketeering" offenses under 18 U.S.C. § 1959(a)(1) & (5) (the "VCAR" offenses), and (3) the evidence was not sufficient to support his conviction.

For the reasons set forth herein, we reject each of these contentions. Although we note potential problems with the district court's jury instruction regarding "interstate commerce," because Vasquez did not adequately object to the charge and we find no plain error, we reject Vasquez' argument on this issue. His remaining arguments are entirely without merit. We therefore conclude that Vasquez's convictions on all counts should be affirmed.

## I. BACKGROUND

### A. *The Offense*

On July 5, 1991, Felix Santiago, known as "Felo," and his wife, Cecelia Verdejo, known as "Mamita," were killed by gunfire while they sat in an automobile on Hunt's Point Avenue in The Bronx, New York. The husband and wife team ran a heroin distribution organization in the Hunt's Point neighborhood, and sold heroin under the brand name "USA."

According to the government's evidence at trial,[1] Vasquez was hired to murder Santiago and Verdejo by a rival drug dealer, Jose "Tito" Sanchez, who sold heroin under the brand name "Too Hot to Handle." The government's evidence included the testimony of an eyewitness, Maria Rosario, who was standing by the car when the victims were shot; an associate of Sanchez who was present when Vasquez re-

---

1. Vasquez presented no evidence in his defense.

quested payment from Sanchez for the murders; an individual, Kelvin Lyons, who was present when Sanchez made a cash payment to Vasquez for the murders; and a former prison inmate to whom Vasquez confessed his involvement in the murders. Additionally, an undercover police detective who witnessed the murders testified that he observed the shootings from a distance, and saw a man shoot at the car, then run away. Although this detective and his partner gave chase, the man who shot at the car eluded the police.

Rosario, who was standing on the sidewalk on the side of the victims' car talking with Verdejo, testified that she saw Vasquez, whom she knew from the neighborhood as "China Man," firing a gun at the car. The shots hit Santiago four times, including once through the heart, and Verdejo one time, through the heart. Kelvin Lyons testified that, among other things, a short time after the murders, he accompanied Sanchez to deliver a cash payment to Vasquez for the murders.

More than a year after the murders, Vasquez encountered a former drug dealer from Hunt's Point, Ricardo Nieves, while on a prison bus. Nieves testified that the men discussed the murders, and Vasquez admitted that he had performed the murders under a contract with Sanchez.

### B. The Trial

In June 1996, Vasquez was charged by a five-count indictment. Count One charged conspiracy to murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5). Counts Two and Three charged Vasquez with committing both murders in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1). Count Four charged use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Count Five, charging Vasquez with possessing ammunition in, and affecting, inter-

state commerce while having a prior felony conviction in violation of 18 U.S.C. § 922(g)(1) and (3), was severed for trial, and eventually dismissed.

Vasquez was tried before a jury from January 4 through January 11, 1999. The jury convicted on all four counts. On December 21, 1999, the district court sentenced Vasquez to life plus five years imprisonment, followed by a five-year term of supervised release, and imposed a mandatory assessment of $200.

## II. DISCUSSION

### A. Testimony regarding Vasquez's reputation "for killing people"

Vasquez first contends that the district court abused its discretion by admitting, over his objection, certain testimony elicited by the government on re-direct examination. Vasquez contends that this testimony constituted impermissible "reputation" evidence concerning his "character," in violation of Federal Rule of Evidence 404, and that the testimony should have been excluded as unfairly prejudicial under Federal Rule of Evidence 403. These arguments are without merit.

Jose Serrano, a neighborhood drug dealer and government witness regarding the Santiago and Verdejo murders, testified, on direct and cross-examination, about two violent confrontations between himself and Vasquez, one occurring in early 1992 and the other in the summer of 1992. Regarding the first incident, Serrano stated, on direct examination, that while he was at the apartment of a neighborhood drug dealer, Vasquez appeared at 3:00 a.m. and knocked on the door, looking for an individual named Marcos Alfonso. Serrano saw Vasquez through the peephole in the apartment door. Leaving the door closed, Serrano retrieved a weapon in response to Vasquez's arrival, and announced Vas-

quez's presence to Alfonso. As Alfonso approached the door to unlock it, Vasquez began shooting through the door. The other encounter described by Serrano took place during the summer of 1992. On this occasion, when Serrano and another drug dealer heard that Vasquez was in the neighborhood, they retrieved a gun, located Vasquez, and fired several shots at him. This testimony was introduced by the government without objection and is not challenged on this appeal.

On cross-examination, defense counsel attacked Serrano's credibility, pointing to several crimes in which Serrano was involved. Defense counsel also questioned Serrano about the incidents described above. The following exchange took place during cross-examination:

Q: When you testified on direct examination there was no testimony you ever saw [Vasquez] with a gun at that point, is that correct? [sic]

. . .

A: I didn't testify to it but I didn't see him with his gun.

Q: But you then went and you got a gun out of the floorboard?

A: Yes.

Q: And this person Marco also got a gun out of the floorboard?

A: Marco didn't get a gun.

Q: Just you?

A: Just me.

. . .

Q: At that point, once you took out the [gun] did you try to fire the weapon?

A: Yes, I did.

Q: Were any bullets fired from there?

A: No.

Q: Isn't it a fact, sir, that you started shooting without anybody shooting at you first? Isn't that correct sir?

A: No, I didn't.

Q: Isn't it a fact that you yelled out I have a gun, I'm going to shoot you? Isn't that correct sir?

A: No, I didn't.

Q: Isn't it a fact that you yelled out I'm going to kill you, I'm going to shoot you?

A: No, I didn't.

. . .

Q: Violence was no stranger to you at that time, is that correct?

A: Yes.

App. at 56–58.

In response, the government asked and received answers to the following questions on re-direct examination:

Q: Why did you get the gun when you saw China Man at the door that evening?

A: Because I know his reputation.

Q: What is that reputation?

MR. SIEGEL [defense counsel]: Objection, your Honor.

THE COURT: Overruled.

Q: What is that reputation?

A: For killing people.

App. at 71. The re-direct examination ended, and defense counsel requested a sidebar with the court. Defense counsel reiterated his objection to the quoted line of questioning, and argued that "there was no door opened up by defense counsel on cross-examination, and therefore I would ask the court to declare a mistrial." The court rejected defense counsel's argument, and stated,

The door was not only opened, it was opened wide. You virtually begged for it. You questioned his motive in picking up a gun. You suggested that he had started shooting with no provocation, and it was perfectly legitimate to go

back on redirect, in my view, and explore it.

App. at 72. Vasquez asserts this argument again on appeal, and argues that the district court abused its discretion in admitting this evidence because it was unfairly prejudicial and constituted impermissible character evidence. We reject these contentions.

■■■ "The scope of redirect examination is a matter entrusted to a trial judge's broad discretion. Such redirect may be used to rebut false impressions arising from cross-examination and the trial judge is in the best position to determine whether such a false impression was created." *United States v. Diaz*, 176 F.3d 52, 80 (2d Cir.), *cert. denied*, 528 U.S. 875, 120 S.Ct. 181, 314, 315, 145 L.Ed.2d 153 (1999) (citations and internal quotation marks omitted). Federal Rule of Evidence 403 provides for the exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." The traditional balancing performed under Rule 403 is altered, however, in the context presented here:

> The weighing of relevance under Rule 403 may be altered when a false impression is created by earlier testimony. That is, evidence whose probative value might not ordinarily outweigh its prejudicial effect if offered on direct examination is admissible to rebut testimony elicited on cross examination that created a false impression.

*United States v. Bilzerian*, 926 F.2d 1285, 1296 (2d Cir.1991).

In *Diaz*, we upheld the admission of similar redirect testimony. *Diaz*, 176 F.3d at 80. On cross-examination, the defendants in that case emphasized that the government witness had received money to travel from the government. The government, on redirect examination, asked the witness to explain the purpose of those payments. The district court overruled a defendant's objection to this question and allowed the witness to testify that she received money from the government to leave the area because she was afraid of the objecting defendant. *Id.* This Court rejected that defendant's challenge to this testimony on appeal, reasoning that "defendants-appellants opened the door for the government's redirect by creating an impression that [the witness] was being paid for her testimony and that the government was subsidizing her alleged 'vacation.'" *Id.*

Here, the defendant's cross-examination likewise "opened the door" for the government's redirect. Vasquez contends, however, that the door was not opened because cross-examination focused on *who fired first*, not *why* Serrano retrieved a weapon. Therefore, Vasquez argues, the re-direct evidence was not in response to any subject raised during cross-examination. This contention is unconvincing. Vasquez sought to show that Serrano reached for his gun in aggression. The government's redirect was merely to clarify Serrano's purpose in retrieving his weapon. The district court did not abuse its discretion by rejecting Vasquez's objection below and admitting the testimony at trial.

■■■ Vasquez also contends that this testimony was improperly used as character evidence to prove his propensity for killing people, in violation of Rule 404.[2] In support of this argument, Vasquez points to the government's rebuttal summation, where the government recalled Serrano's

---

**2.** Rule 404 governs the admissibility of character evidence, and allows the government to offer evidence of a defendant's character only to rebut such evidence offered by the defendant. Fed.R.Evid. 404(a)(1).

testimony that Vasquez had a reputation "for killing people." As we concluded earlier, however, the government offered this testimony to rebut an impression created during cross-examination of Serrano, *not* as character evidence under Rule 404. *See Bilzerian*, 926 F.2d at 1296 (noting that the scope of redirect testimony is within the trial court's broad discretion and rejecting challenge based on Rule 404 where "the evidence was not admitted for that improper purpose"). In any event, this statement in the government's rebuttal summation (and, indeed, the testimony itself) was "unimportant in relation to everything else the jury considered on the issue." *United States v. Quiroz*, 13 F.3d 505, 513 (2d Cir.1993) (internal quotation marks and citation omitted) (noting standard for finding an error harmless).

For the foregoing reasons, the district court was within its broad discretion in concluding that the challenged testimony was admissible. *See Bilzerian*, 926 F.2d at 1296. The court was certainly not compelled to conclude that the admitted testimony's probative value was "substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. We have considered Vasquez's remaining arguments regarding the admission of this testimony and conclude that these arguments are likewise meritless.

B. *Jury Instruction on Interstate/Foreign Commerce*

■ Vasquez argues that his conviction should be reversed because the district court's jury instruction directed the verdict with respect to the interstate/foreign commerce element of the VCAR charges. Regarding this element, the district court charged:

If you decide that an enterprise existed and engaged in racketeering activity, you must then decide whether there was

any effect at all on interstate or foreign commerce from the activities of the group. The effect can be minimal; it need not be substantial, nor need the defendant be aware of the effect. All that is necessary is that the activities of the enterprise affect interstate or foreign commerce in some minimal way— for example, by members traveling in interstate or foreign commerce or conducting activities, criminal or otherwise, that in some way affected property in interstate or foreign commerce.

In connection with this finding, *I instruct you that either heroin or cocaine trafficking necessarily involves foreign commerce, because the raw materials for these substances originate outside the United States.*

App. at 93–94 (emphasis added). Vasquez challenges on appeal the portion of the charge relating to heroin and cocaine trafficking, contending that the instruction directed the verdict on an essential element (affect on interstate or foreign commerce) of the counts under 18 U.S.C. §§ 1959(a)(1) and(5) (the VCAR offenses), murder and conspiracy to commit murder in aid of racketeering.

■ To determine our standard of review, we must first determine whether Vasquez preserved this challenge to the jury instruction by objecting below. Federal Rule of Criminal Procedure 30 provides that

[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.

However, "failure to make an objection with adequate specificity to satisfy rule 30 may be disregarded under the 'plain error' provision of [Federal Rule of Criminal

Procedure] 52 where failure to reverse would result in a miscarriage of justice which denied the defendant a fair trial." *United States v. Torres*, 901 F.2d 205, 228 (2d Cir.1990) (internal quotation marks and citation omitted).

During the charging conference, Vasquez did object to the aspect of the charge involving heroin and cocaine trafficking, but the basis for his objection is ambiguous. The record indicates that he objected primarily to the inclusion of "cocaine" in the instruction, because the evidence at trial concerned solely heroin trafficking. The record also reflects a more general objection to that portion of the charge. Defense counsel stated, "Well, I would object to that last portion of [the charge], as requested by the government." Defense counsel did not specifically argue that the charge impermissibly removed an element from the jury nor did he raise that objection when the charge was delivered.

■ Where an appellant "stat[es] distinctly," under Rule 30, the grounds for objecting the charge below, but urges a different ground on appeal, the objection is not properly preserved on appeal and we therefore review for plain error. *Torres*, 901 F.2d at 227–28. Vasquez's situation falls squarely within this rule: he asserts on appeal a different objection to the charge than he advanced below. Vasquez did not assert below that the district court's charge erroneously removed an element from the jury's consideration. Thus, we will address this argument under the plain error standard provided in Rule 52(b).

■ Under the plain error test of Rule 52(b), "before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights." *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quot-

ing *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)) (internal quotation marks omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467, 117 S.Ct. 1544 (quoting *Olano*, 507 U.S. at 732, 113 S.Ct. 1770) (internal quotation marks omitted). "A plain error is an error so egregious and obvious as to make the trial judge and prosecutor derelict in permitting it, despite the defendant's failure to object." *United States v. Gore*, 154 F.3d 34, 43 (2d Cir.1998) (internal quotation marks and citation omitted). Vasquez bears the burden of persuasion to show that the district court's charge amounts to plain error. *United States v. Feliciano*, 223 F.3d 102, 115 (2d Cir.2000).

■ Effect on interstate or foreign commerce is the jurisdictional element of a VCAR offense; therefore, the government is required to provide evidence of such an effect. *See id.*, 223 F.3d at 118. The Supreme Court has held that the Fifth and Sixth Amendments "give[ ] a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." *United States v. Gaudin*, 515 U.S. 506, 522–23, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). Following from this reasoning, the jury is constitutionally required to determine, as an element of a VCAR offense, whether the racketeering enterprise affected interstate or foreign commerce.

On the other hand, we have also held that where "the [racketeering] enterprise's business is narcotics trafficking, that enterprise must be viewed as substantially affecting interstate commerce." *United*

*States v. Miller,* 116 F.3d 641, 674 (2d Cir.1997). Congress has, in fact, found that narcotics trafficking has a substantial effect on interstate commerce. *See* 21 U.S.C. § 801(3) ("A major portion of the traffic in controlled substances flows through interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce.").

Indeed, we recently rejected a challenge to a similar, though not identical, jury instruction in *United States v. Feliciano,* 223 F.3d 102, 117–19 (2d Cir.2000). In *Feliciano,* one defendant challenged the district court's instruction on the interstate/foreign commerce element in a VCAR prosecution, based on the Supreme Court's decision in *United States v. Lopez,* 514 U.S. 549, 558–59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), which held that Congress's commerce power reached only those activities having a substantial relation to interstate commerce. *Feliciano,* 223 F.3d at 117. The defendant argued that the district court's instruction improperly informed the jury that the " 'effect on interstate or foreign commerce ... need only have been minimal,' and that '[i]t is not necessary that [the jury] find that a substantial affect [sic] on interstate or foreign commerce occurred.' " *Id.* (brackets in original). We rejected this argument, noting that we have previously held that "*Lopez* did not heighten the minimal interstate commerce effect requirement for prosecu-

tion of Hobbs Act, RICO narcotics trafficking, and money laundering offenses, all of which are economic activities that in the aggregate have a substantial effect on interstate commerce." *Id.* at 118 (collecting cases). We further reasoned that "the racketeering activity that satisfies the jurisdictional element in this case—narcotics trafficking—is clearly economic in nature and has been found by Congress to have a substantial effect on interstate commerce." *Id.* at 119.

Here, the district court specifically instructed the jury "that either heroin or cocaine trafficking necessarily involves foreign commerce, because the raw materials for these substances originate outside the United States." App. at 94. Vasquez argues that this instruction removed the interstate/foreign commerce element from the jury's consideration, amounting to a 'directed verdict' on that issue, and therefore relieving the government from proving beyond a reasonable doubt the connection with interstate or foreign commerce.[3]

 In evaluating a challenged jury instruction, we must first "focus on the specific language challenged, to determine whether it passes muster[;][n]ext, we must review the instructions as a whole to see if the entire charge delivered a correct interpretation of the law." *United States v. Coyne,* 4 F.3d 100, 113 (2d Cir.1993) (internal quotation marks and citations omitted). The specific language contested here removed from the jury at least a portion of the jurisdictional element of the VCAR offenses; that is, the district court decided that heroin or cocaine trafficking necessar-

---

3. In a letter submitted pursuant to Federal Rule of Appellate Procedure 28(j), Vasquez directs us to the United States Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond

the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Here, Vasquez does not contend that he was sentenced beyond the statutory maximum based on a fact not submitted to the jury; therefore, *Apprendi* is inapposite.

ily affected interstate or foreign commerce. Prior to *Gaudin,* our cases stated that the jurisdictional element of at least some federal crimes is to be decided by the court. *See e.g., United States v. Calder,* 641 F.2d 76, 78 (2d Cir.1981) (holding that, in a Hobbs Act case, "[i]t was for the court to determine as a matter of law the jurisdictional question of whether the alleged conduct affected interstate commerce; it was for the jury to determine whether the alleged conduct had in fact occurred"); *United States v. Augello,* 451 F.2d 1167, 1170 (2d Cir.1971) ("[I]t was for the court, and not the jury, to determine whether the Government's evidence, if believed, would bring the activities of the defendant within the statute and sustain federal jurisdiction.") (internal quotation marks and citation omitted). As the Supreme Court in *Gaudin* made clear, however, even elements that include mixed questions of fact and law must be submitted to and decided by the jury. *Gaudin,* 515 U.S. at 512–13, 115 S.Ct. 2310. To the extent that our prior cases conflict with *Gaudin,* we recognize that we are bound by the Supreme Court's teaching in *Gaudin,* that mixed questions of law and fact in criminal cases are to be resolved by juries. *Gaudin,* 515 U.S. at 512–13, 115 S.Ct. 2310. Under *Gaudin,* the challenged portion of the jury charge, then, may not pass muster.

When the jury charge is viewed in its entirety, however, the error is not so clear. The district court did inform the jury that the government must establish beyond a reasonable doubt "[t]hat there existed an organization as described in the indictment, and that the organization was an enterprise engaged in, and the activities of which affected, interstate or foreign commerce." App. at 90. Additionally, the district court instructed

> [b]efore you can find the defendant guilty of each of these counts, *you must find* also that, at the time the alleged

murder took place, there existed an enterprise engaged in racketeering activity.... This element has three parts: (1) The existence of the enterprise or group; (2) The enterprise's engagement in acts of racketeering; and (3) *The enterprise's effect on interstate commerce.*

App. at 92 (emphasis added). Finally, directly after issuing the instruction challenged here, the district court further charged:

> In sum, if you find that there was, in fact, a group of people characterized by a common purpose or purposes, an ongoing formal or informal organization or structure, core personnel who functioned as a continuing unit during a substantial time period within the time charged in the indictment as I have described, then you may find that an enterprise existed. In addition, *if you find* that an enterprise was involved in a racketeering activity, and *that the enterprise had an effect, be it legal or illegal activity, on interstate and foreign commerce,* then you may find a racketeering enterprises [sic] existed.

App. at 94 (emphasis added). When examined in its entirety, the jury charge stated several times that it was for the jury to find whether the interstate/foreign commerce element had been proven by the government.

In any event, although we may have concerns about the district court's instruction regarding heroin or cocaine trafficking and its connection with interstate or foreign commerce element, we are mindful of our standard of review in this case. Because Vasquez did not preserve his challenge to the jury charge, we are reviewing the jury charge for plain error. In this case, Vasquez's claim fails because he cannot satisfy the fourth prong of the plain

error test, that the error "affect[ed] the fairness, integrity, or public reputation of [the] judicial proceedings." *Johnson,* 520 U.S. at 467, 117 S.Ct. 1544.

As we note below, in the context of Vasquez's sufficiency of the evidence claims, the government did not present evidence to support the district court's instruction that "the raw materials [for heroin or cocaine] originate outside the United States." App. at 94. In support of his argument for reversal, Vasquez cites this Court's decision in *United States v. Jones,* 16 F.3d 487, 491 (2d Cir.1994), in which we reversed a conviction for a violation of 18 U.S.C. § 922(g)(1) (prohibiting felons, *inter alia,* from possessing firearms) because the only evidence that the firearm traveled in interstate commerce (a required element) was expert testimony that guns were not, at that time, manufactured in New York (where the felon allegedly possessed the firearm). This Court concluded that "[b]ecause the *only evidence* that the gun traveled in interstate commerce is the arbitrary inference that any gun found in New York must have been made outside New York," the conviction must be vacated. *Id.* at 492 (emphasis added).

■ Our decision in *Jones,* however, is easily distinguished from this case. In *Jones,* as we then emphasized, the *only* evidence that the firearm traveled in interstate commerce stemmed from an "arbitrary inference." Here, by contrast, even if we disregard the district court's charge instructing the jury that cocaine or heroin trafficking necessarily implicates *foreign* commerce because the raw materials are found outside the United States, we are satisfied that the government established, and the jury found, that the racketeering enterprise engaged in narcotics trafficking. Engaging in narcotics trafficking affects *interstate* commerce, at the very least, regardless of where the raw materials origi-

nate. *See Miller,* 116 F.3d at 674; 21 U.S.C. § 801(3). Vasquez does not contest that narcotics (specifically, heroin) trafficking implicates interstate commerce. For these reasons, we conclude that Vasquez cannot demonstrate that any error committed by the district court in its jury instruction seriously affected the fairness, integrity or public perception of the judicial proceeding. Simply put, "[n]o 'miscarriage of justice' will result here if we do not notice the [alleged] error, and we decline to do so." *Johnson,* 520 U.S. at 470, 117 S.Ct. 1544 (internal citation omitted).

### C. *Sufficiency of the Evidence*

■ Finally, Vasquez contends that the evidence was insufficient to support his convictions and, therefore, his convictions should be reversed. Vasquez argues primarily that the evidence supporting these convictions, the testimony of several witnesses, was "incredible on its face." He additionally argues that the government did not present any evidence to establish that the racketeering enterprise's activities affected interstate commerce. We reject these arguments and affirm Vasquez's convictions on all counts.

■ "A defendant seeking to overturn a conviction on the grounds that the evidence was insufficient bears a heavy burden. A conviction challenged on sufficiency grounds will be affirmed if, viewing all the evidence in the light most favorable to the prosecution, a reviewing court finds that *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Desimone,* 119 F.3d 217, 223 (2d Cir.1997) (citations and internal quotation marks omitted).

■ We reject Vasquez's argument attacking the reliability and credibility of the testimony of four government witnesses.

Vasquez contends that these witnesses' testimony included several inconsistencies and lies. To the extent that any particular witness's testimony was inconsistent, Vasquez had an opportunity to highlight these to the jury at trial. The jury chose to believe the witnesses' testimony despite any inconsistencies. We will defer to the jury's assessment of credibility. *See United States v. Payton,* 159 F.3d 49, 56 (2d Cir.1998); *see also Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942) ("It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it."), *superseded by statute, in part, as recognized in Bourjaily v. United States,* 483 U.S. 171, 181, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

█ We also reject Vasquez's argument that the government failed to present *any* evidence regarding the interstate/foreign commerce element of the VCAR offenses. Although the government did not present evidence specifically supporting the district court's instruction that the raw materials for heroin or cocaine originate outside the United States (and therefore affecting foreign commerce), the government introduced ample evidence regarding the heroin trafficking activities in which Vasquez and Sanchez's organization were involved. From this evidence, a rational juror could have concluded that the interstate/foreign commerce element of the VCAR offenses was satisfied.

In its entirety and viewed in the light most favorable to the government, the evidence against Vasquez was more than sufficient to sustain his convictions. The government presented an eyewitness to the murders of Santiago and Verdejo who identified Vasquez as the shooter. The government also presented evidence re-garding Sanchez's payment to Vasquez for the murders of Santiago and Verdejo. Other evidence presented by the government included a confession to a fellow inmate approximately a year following the killings, and the testimony of an undercover police officer who was near the scene of the crime and gave chase. In short, the government adduced sufficient evidence to persuade a rational juror that Vasquez shot and killed Santiago and Verdejo in aid of and to obtain a benefit from a racketeering enterprise.

### III. CONCLUSION

For the foregoing reasons, Vasquez's convictions on all counts are affirmed. We reject Vasquez's arguments alleging error in the district court's evidentiary determinations. We further reject his arguments claiming that there was insufficient evidence to sustain his convictions. Finally, although we note the potential error in the district court's jury instruction on the interstate/foreign commerce element of the VCAR offenses, we conclude that Vasquez has not demonstrated that this jury instruction was plain error such that we should exercise our discretion to notice it.

Accordingly, we AFFIRM the judgment of the district court.