**UNITED STATES of America,**
**Appellee,**

v.

**Robinson LAZALA, Defendant–**
**Appellant.**

**No. 06–4491–cr.**

United States Court of Appeals,
Second Circuit.

Jan. 15, 2008.

pertinent to this appeal. *See* Fed.R.Civ.P. 65(d).

**352**

Avi Weitzman, Assistant United States Attorney for the Southern District of New York (Michael J. Garcia, United States Attorney; Helen V. Cantwell, Jonathan S. Kolodner, Assistant United States Attorneys, on the brief), New York, NY, for Appellee.

Roger L. Stavis (Jerry A. Weiss, on the brief), Gallet Dreyer & Berkey, LLP, New York, NY, for Defendant–Appellant.

PRESENT: Hon. CHESTER J. STRAUB, Hon. SONIA SOTOMAYOR and Hon. RICHARD C. WESLEY, Circuit Judges.

## SUMMARY ORDER

Defendant Robinson Lazala appeals from a final judgment entered on September 14, 2006, in the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) convicting him, following a jury trial, of assaulting a cooperating witness in retaliation for the witness's testimony in an official proceeding, in violation of 18 U.S.C. §§ 1513(b)(1) and (2); conspiring to do the same, in violation of 18 U.S.C. § 1513(e); and committing an assault in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(3). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision.

Lazala advances three arguments on appeal: (1) that he was deprived of the right to put on a meaningful defense when the District Court excluded testimony about a letter sent from the lawyer of one of the conspiracy's victims to a government prosecutor; (2) that the evidence was insufficient to establish that the racketeering enterprise was ongoing at the time of the assault; and (3) that the Southern District of New York was an improper venue. As explained below, the first two arguments lack merit and the third is waived.

First, Lazala's contention that the District Court denied him the ability to show the jury "any and all evidence of [Albert] Burgos' independent motive for the assault" is belied by the record. The

defense was given ample opportunity to establish its theory that Burgos was not motivated by an agreement with Lazala, but rather had an independent motive based on the purported cooperation of Emilio Romero's brother against Burgos. During cross-examination of Romero, the defense repeatedly asked him whether he had told his lawyer that his brother had cooperated against Burgos. Romero denied making such a statement on four separate occasions. The defense also had the opportunity to question Burgos directly about his motivation for the assault, but, notably, did not ask him about whether he knew of any possible cooperation against him by Romero's brother. Nor did the defense attempt to call Romero's brother as a witness.

The only proposed evidence on this topic that the District Court excluded was testimony regarding a letter that Romero's then-attorney, John H. Jacobs, had sent to Assistant United States Attorney Nicole LaBarbera after the assault. That letter stated, in relevant part, "I visited Emilio Romero this morning, who reported to me that he was assaulted in the MDC by another inmate by the name of Bergas (ph).... Apparently, Bergas was upset that Mr. Romero's brother had given information about him...." The District Court ruled that testimony about the letter from LaBarbera or from Jacobs's associate, Stephanie Plowman (who initialed the letter), was irrelevant because "Jacobs [said] this as a lawyer without firsthand knowledge, dressed up with the way it is with the word 'apparently.'"

We accord "great deference" to a district court's evidentiary rulings pertaining to relevancy, "mindful that [the district court] sees the witnesses, the parties, the jurors, and the attorneys, and is thus in a superior position to evaluate the likely impact of the evidence." *United States v.*

*Paulino*, 445 F.3d 211, 217 (2d Cir.2006) (internal quotation marks omitted). Accordingly, we review relevancy rulings only for abuse of discretion, and "[t]o find such an abuse we must be persuaded that the trial judge ruled in an arbitrary and irrational fashion." *United States v. Dhinsa*, 243 F.3d 635, 649 (2d Cir.2001) (internal quotation marks omitted). We do not believe that the exclusion of testimony related to the Jacobs letter was either arbitrary or irrational. As noted above, Romero repeatedly denied ever saying to his attorney that Burgos was upset because of Romero's brother's purported cooperation. Indeed, the defense showed the Jacobs letter to Romero on cross-examination in order to try to refresh his recollection, only to have Romero deny ever having seen the letter or having made such a statement to Jacobs. Thus, all that LaBarbera or Plowman could testify to was that the letter was sent. However, the letter itself establishes only that Jacobs—a defense attorney with no firsthand knowledge of Burgos's motivations—believed that Romero had told him that Burgos was "apparently" motivated by Romero's brother's purported cooperation. It was certainly not arbitrary or irrational for the District Court to conclude that the letter's content—written by a third party and with uncertain language ("apparently") couching its main assertion—was not probative of Burgos's actual motivation and thus was irrelevant. *See* Fed.R.Evid. 401 (evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Accordingly, we find that the District Court did not prevent Lazala from putting on a meaningful defense, and that it acted within its allowable discretion in ruling that testimony relating to the Jacobs letter was irrelevant.

■ Lazala's second argument is that there was insufficient evidence for the jury to convict him of count three of the indictment—assault in aid of racketeering activity—because there was "no evidence" that the racketeering enterprise "was still affecting interstate commerce and engaged in racketeering acts, like narcotics trafficking, in 2004." In reviewing a challenge to the sufficiency of the evidence, we view the evidence "in the light most favorable to the government" and draw all reasonable inferences in its favor. *United States v. Gaskin,* 364 F.3d 438, 459 (2d Cir.2004), *cert. denied,* 544 U.S. 990, 125 S.Ct. 1878, 161 L.Ed.2d 751 (2005). In addition, "we consider the evidence in its totality, not in isolation, and the government need not negate every theory of innocence." *United States v. Autuori,* 212 F.3d 105, 114 (2d Cir.2000). The jury's verdict must be sustained if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Lazala concedes that the government established that the racketeering enterprise of which he was a part—the Sex Money Murder/Bloods gang ("SMM gang")—existed in 1997 and continued to exist at the time of the assault in 2004. He argues, however, that no evidence established that the SMM gang was still involved in *interstate* racketeering activities in 2004. This is simply untrue. Witnesses at trial testified that members of the SMM gang continued to meet in prison throughout the period of the indictment, and that some, while in prison, would "get[ ] money or get[ ] drugs." It was thus reasonable for the jury to infer that the SMM gang was still involved in interstate racketeering activities at the time of the assault. *See United States v. Vasquez,* 267 F.3d 79, 90 (2d Cir.2001) ("Engaging in narcotics trafficking affects interstate commerce, ... regardless of where raw materials originate.") (emphasis omitted). Lazala's reliance on *United States v. Morales,* 185 F.3d 74 (2d Cir.1999), is unavailing. In *Morales,* we overturned the jury verdict because the indictment charged a continuing nine-year enterprise, from 1987 to 1996, yet in 1988 *all* of the enterprise's members died or went to prison, and *no* evidence indicated that the enterprise continued from 1988 until 1995, when the defendants began committing new criminal acts. *See id.* at 79–81. Here, on the other hand, Lazala concedes that the SMM gang remained in operation when the assault occurred in 2004.

■ Lazala's final argument is that venue for counts one and two of the indictment was improper in the Southern District of New York because the assault occurred in the Eastern District of New York. This argument is waived because the alleged venue defect was obvious in light of the indictment and the statements made by the government during the first pre-trial conference, and Lazala failed to raise any objection to venue until after the government rested at trial. *See United States v. Novak,* 443 F.3d 150, 161 (2d Cir.2006) ("[T]his Court has found a waiver of the right to challenge venue in a criminal trial only under extraordinary circumstances. One such circumstance is when the indictment or statements by the prosecutor clearly reveal [a venue] defect but the defendant fails to object.") (internal quotation marks omitted). Lazala contends that there was an ambiguity in the indictment because it alleged that the crime occurred "in the Southern District of New York and the Eastern District of New York." However, at the first pre-trial conference, the District Court specifically asked the government about the source of venue, to which the government replied: "The jurisdiction in this courthouse for the

pending indictment comes from the fact that all the cases that were involved in the arrangement were pending in the Southern District of New York. In other words, the witness that was assaulted had previously testified in the Southern District of New York." Lazala was therefore on clear notice of the alleged defect in venue prior to trial, and his failure to raise it then precludes us from addressing it now.[1]

For the foregoing reasons, the judgment of the District Court is AFFIRMED.

---

1. Because Lazala waived his venue objection, we do not reach the issue of whether venue for an offense under 18 U.S.C. § 1513 may lie in the district where the official proceedings occurred, which in this case was the Southern District of New York.