06-5319-cr
USA v. Gomez

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Argued:  May 6, 2008          Decided:  September 11, 2009)

Docket No. 06-5319-cr (L), 06-5690-cr (XAP), 06-5697-cr (CON)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

    Appellee-Cross-Appellant,

        -   v.   -

ARCENY GOMEZ,

    Defendant-Appellant-Cross-Appellee,

DANNY REYES,

    Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:   WINTER and HALL, Circuit Judges.[*]

Appeal from judgments of conviction and sentence entered in the United States District Court for the Southern District of New York (Lawrence M. McKenna, Judge).  We reverse on the cross-appeal because there was no plain error in the jury instruction regarding the Hobbs Act requirement of an effect on interstate commerce and the district court erred as to the applicable mandatory minimum sentence.  We affirm on Gomez's appeal.

---

[*]The Honorable Louis F. Oberdorfer, United States District Judge for the District of the District of Columbia, sitting by designation withdrew from consideration of this matter.  Pursuant to Second Circuit Local Rule 0.14(b), the matter is being decided by the two remaining members of the panel.

1

LAURIE A. KORENBAUM, Assistant United States Attorney for the Southern District of New York (Michael J. Garcia, United States Attorney, on the brief, Katherine Polk Failla, Assistant United States Attorney, of counsel), United States Attorney's Office for the Southern District of New York, New York, New York, for Appellee-Cross-Appellant.

JOHN F. KALEY, Doar Rieck Kaley & Mack, New York, New York, for Defendant-Appellant-Cross-Appellee.

PATRICK J. JOYCE, New York, New York, for Defendant-Appellee.

WINTER, Circuit Judge:

Arceny Gomez appeals from his conviction by a jury after a trial before Judge McKenna. He, along with Danny Reyes, who did not appeal but whose sentence is a subject of the government's cross-appeal,[1] was convicted of: (i) conspiring to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951(a); (ii) committing a Hobbs Act robbery (or aiding and abetting thereof) in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2; (iii) conspiring to possess with intent to distribute one kilogram of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); and (iv) using and carrying (or the aiding and abetting thereof) a firearm during and in relation to a crime of violence and a drug trafficking crime in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2.

---

[1] For convenience, we refer to the government's appeal as to Reyes and cross-appeal as to Gomez collectively as a cross-appeal.

2

After the verdict, the district court vacated both Hobbs Act convictions on the ground that the evidence of an effect on interstate commerce was insufficient as a matter of law. Gomez appeals from his conviction and sentence on the Section 924(c) charge. The government cross-appeals from the district court's vacating of the Hobbs Act convictions and failure to impose a ten year mandatory minimum sentence on the Section 924(c) count. We affirm on Gomez's appeal and reverse on the government's cross-appeal.

BACKGROUND

a) The Evidence

Because the jury convicted Gomez and Reyes on all counts, we view the evidence in the light most favorable to the government. See United States v. Chavez, 549 F.3d 119, 124 (2d Cir. 2008).

Gomez and Reyes, along with two individuals named Ray Solis and Alfredo DeJesus, engaged in a botched robbery of a drug dealer named Rogelio Rivera, during which Rivera was shot and killed. The government's case consisted principally of testimony from DeJesus, post-arrest statements made by Gomez and Reyes, and telephone records and documents linking the conspirators around the time of the robbery and murder.

DeJesus testified that he discussed with Gomez the plan for the robbery, which they intended would net three kilos of cocaine. Solis was to pose as a drug buyer, using Gomez's black

3

Acura because they believed that it was the kind of car a drug dealer would use. The plan was to offer Rivera fake money for the drugs, and, while Rivera inspected the money, draw their guns and rob him of the cocaine.

Reyes, who lived both in Connecticut and the Bronx, was the defendants' connection with Rivera. He had sufficient prior contact with Rivera that he could set up the proposed deal to acquire cocaine and that Rivera trusted him to broker the deal with Solis, a person Rivera had not previously met. While the four were on their way to a restaurant in the Bronx where they were to meet with Rivera, they stopped their cars and got out. According to DeJesus, Solis and Reyes adjusted their waistbands in a manner that suggested that each had a gun. Thereafter, Solis and Reyes got into the Acura and continued driving while Gomez and DeJesus followed in a white van. Solis and Reyes picked up Rivera near the restaurant. Those three then traveled together in the Acura to the site of the intended robbery. DeJesus and Gomez followed in the white van. Reyes and Solis entered a building with Rivera, while DeJesus and Gomez stayed outside to serve as lookouts during the intended robbery. After a short time, a shot rang out. Solis and Reyes ran out of the building and drove away in the Acura, while DeJesus and Gomez followed in the van. When they stopped to switch cars, Reyes indicated that Solis had shot Rivera. Solis said that the

4

robbery had netted only one kilogram of cocaine.

When Reyes and Gomez were interviewed after their arrests, each substantially corroborated DeJesus's account of the robbery. Reyes's statement indicated that the plan had been for all the perpetrators to use firearms in the robbery.

In order to show Gomez's intent in anticipation of his testimony outlined below, DeJesus testified as to several other drug robberies committed by Gomez, including one in which he and Gomez had netted 1.5 kilograms of heroin in or around February 1998, and another in the spring of 1998 involving one kilogram of cocaine. Finally, DeJesus described a third robbery that was planned to net fifty kilograms of cocaine. DeJesus discussed this robbery with Gomez and the other perpetrators, hoped to be taken along, but ultimately he did not go. DeJesus testified that Gomez told him that the robbery was "triumphant" and that he and Gomez celebrated its success. Gomez then gave DeJesus four kilograms of cocaine that DeJesus sold to a friend of his.

Gomez testified in his own defense and stated that while he did participate in the robbery of Rivera, he did so only as a paid informant for the Drug Enforcement Administration ("DEA"). Gomez had indeed been acting as an informant for the DEA in some matters but for several days did not inform his handlers about the robbery in question. He sought to explain this delay by stating that his DEA handler did not speak Spanish well and that

5

an officer he worked with in the New York Police Department ("NYPD") had given Gomez a disconnected pager number. In response, the government presented testimony from Gomez's NYPD handler indicating that the officer's pager number had not changed or been disconnected and that Gomez could have informed him of the robbery at a debriefing session a few days after the robbery. Instead, Gomez did not mention the robbery until he had been arrested for it.

b) Jury Instructions, Post-Trial Proceedings, and Sentencing

The judge gave several jury instructions pertinent to this appeal.

Regarding the interstate commerce element of the Hobbs Act[2] conspiracy count, the district court told the jury that:

> [T]he government must prove . . . that . . . had the robbery been completed interstate commerce would have been or potentially would have been affected in some way[,] even if the effect is slight . . . . Such robbery need only affect interstate commerce in any way or degree, even if the effect is only minimal . . . . The government satisfies its burden of proving an effect . . . if it proves beyond a reasonable doubt any

---

[2]The Hobbs Act provides that:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a).

6

effect, whether it was harmful or not.

The court also instructed that:

> Congress has determined that all narcotics activity, even purely local narcotics activity, has a substantial effect on interstate commerce. Thus, if you find that the object of the robbery was to possess narcotics with the intent to distribute them, you may find this element satisfied.

With respect to the substantive Hobbs Act count, the judge referred the jury to the above-quoted instructions on the conspiracy count. The judge also noted that substantive Hobbs Act robbery requires a taking of property, "by means of actual or threatened force . . . ."

With respect to the Section 924(c)[3] count, the district court charged the jury that "[i]n order to convict the defendant you must find that the government has proven beyond a reasonable doubt his involvement in at least one of the underlying crimes of violence or the drug-trafficking crime." The judge did not

---

[3]Title 18 U.S.C. § 924(c)(1)(A) states in pertinent part:

[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm . . . shall, in addition to the punishment provided for such crime of violence or drug trafficking crime –-

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

7

instruct the jury that it had to be unanimous as to which crime was the predicate for a Section 924(c) conviction.

The jury reached a guilty verdict on all counts. Gomez and Reyes moved to set aside their convictions under the Hobbs Act on the grounds that there was legally insufficient evidence of the requisite effect on interstate commerce. The district court agreed and vacated the verdict on both Hobbs Act counts.

Gomez alone argued that his Section 924(c) conviction should also be vacated because the jury was not instructed that it had to be unanimous on the selection of a specific predicate crime and because the vacating of the Hobbs Act counts had eliminated two of the three possible predicates, rendering it impossible to know which alleged predicate(s) the jury had found. Although the district court agreed that the jury should have been instructed that they had to be unanimous on a particular predicate, it found that there was no need to vacate the Section 924(c) conviction. It reasoned that had the jury been properly instructed, it would have selected the remaining drug distribution count as a predicate.

In sentencing Reyes, the district court calculated his base offense level using the three kilograms of cocaine that the robbers had planned to steal rather than the one kilogram actually obtained. This resulted in a base offense level of 28 for Reyes.

8

On Reyes's Section 924(c) convictions, the district court imposed the five year minimum sentence for use of a gun rather than the ten year mandatory minimum sentence for discharging it. See 18 U.S.C. § 924(c)(1)(A); supra note 3.  The district court noted that the jury had not been asked to specify which gun(s) was the basis for the Section 924(c) convictions.  The court then reasoned that because there was some evidence that two guns were involved but only one was discharged, it was impossible to say whether the jury had convicted Reyes under Section 924(c) for the gun that was discharged.  Accordingly, the five year sentence for mere use applied.  The district court ultimately imposed a total sentence of 132 months -- 72 months was based on the drug conspiracy count and a consecutive 60 months was based on the Section 924(c) count.

With respect to Gomez, the district court began by factoring in the three kilograms of cocaine contemplated in planning the robbery.  The court, however, rejected the government's argument that all of the drugs from Gomez's alleged prior drug robberies should be used in calculating Gomez's guidelines sentence.  The district court specifically rejected DeJesus's testimony regarding the robbery involving one kilogram of cocaine and the robbery involving fifty kilograms of cocaine, finding that these events were "not described with adequate specificity."  The district court, however, did factor in the February 1998 robbery

9

involving 1.5 kilograms of heroin. The district court also followed the logic it applied to Reyes to hold that only the five year minimum sentence under Section 924(c) should apply to Gomez. The district court ultimately sentenced Gomez to 162 months -- 102 months was based on the drug conspiracy count and a consecutive 60 months was on the Section 924(c) count.

DISCUSSION

a) The Hobbs Act Counts

The government's cross-appeal seeks to reinstate Reyes's and Gomez's convictions on the conspiracy and substantive Hobbs Act counts. To sustain a Hobbs Act conviction, there must be evidence that the underlying act affected interstate commerce. See United States v. Parkes, 497 F.3d 220, 227 (2d Cir. 2007). The government argues that any error in the jury instructions was harmless and that the evidence regarding the interstate commerce element of the Hobbs Act offenses was sufficient. We agree.

Because no objection was made at trial to the interstate commerce instructions, plain error analysis applies. See United States v. Kaplan, 490 F.3d 110, 124 (2d Cir. 2007). A finding of plain error requires "(1) error, (2) that is plain, and (3) that affects the defendant's substantial rights. If all three conditions are met, we may exercise our discretion to notice the error, provided that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United

10

States v. Carter, 489 F.3d 528, 537 (2d Cir. 2007) (citations omitted).  No error in the present case affected substantial rights.

We first identify any error in the jury instructions.  The pertinent portion reads, "Congress has determined that all narcotics activity, even purely local narcotics activity, has a substantial effect on interstate commerce.  Thus, if you find that the object of the robbery was to possess narcotics with the intent to distribute them, you may find this element satisfied." (emphasis added).  The district court's reference to a Congressional determination was to Section 801(3)-(6) of the Controlled Substances Act, which contains legislative findings that both intrastate and interstate drug trafficking affect interstate commerce.  See 21 U.S.C. § 801(3)-(6).  In fashioning these instructions, the district court may have reasoned that, given the Congressional findings, robberies involving drugs or their proceeds are per se within the affecting-commerce requirement of the Hobbs Act, a conclusion we later adopted in United States v. Fabian, 312 F.3d 550, 555-56 (2d Cir. 2002).  However, to the extent that Fabian held that proof that a robbery involved drugs or proceeds thereof automatically satisfied the interstate commerce element of the Hobbs Act as a matter of law, thereby taking the issue from the jury, it was overruled by United States v. Parkes, 497 F.3d 220 (2d Cir. 2007), in light of

11

intervening Supreme Court and other circuit decisions. Id. at 229-30. Parkes held that "[p]roving an effect on interstate commerce is . . . an element of a Hobbs Act offense, which must be proven beyond a reasonable doubt to a jury." Id. at 227.

The district court's instructions quoted above were consistent with Parkes in that they used the permissive "may" and therefore described only what the jury might find rather than taking the issue from it entirely. The error in the instruction lay in referencing Congressional findings. This reference may have misled the jury into believing that those findings were binding upon it as a trier of fact. This view is not consistent with Parkes. See id. Whether this error was "plain" is a close question, but one that we need not reach because it was harmless and for that reason did not impair the defendants' substantial rights.

The error in the jury instruction was in its potential to mislead the jury into believing that it need not make an independent finding regarding the element of an effect on interstate commerce. Such omitted element errors are subject to harmless error analysis. See Neder v. United States, 527 U.S. 1, 10 (1999). In such a case, we "consider the weight of trial evidence bearing on the omitted element; and if such evidence is overwhelming and essentially uncontroverted, there is no basis for concluding that the error seriously affects the fairness,

12

integrity, or public reputation of judicial proceedings." United States v. Guevara, 298 F.3d 124, 126-27 (2d Cir. 2002) (citations and quotation marks omitted) (considering an Apprendi error, Apprendi v. New Jersey, 530 U.S. 466 (2000), where the jury did not make a finding on an element).[4] To sustain the conviction, we must find that the jury would have returned the same verdict beyond a reasonable doubt. See United States v. Jackson, 196 F.3d 383, 386 (2d Cir. 1999).

The government's evidence regarding interstate commerce was that the object of the robbery was three kilos of cocaine and that one kilo was seized. This evidence was not controverted; that is, no defendant challenged the object, fact, or result of the robbery. Also uncontroverted was the fact that Reyes, who occupied residences in both Connecticut and the Bronx, was known to Rivera and trusted to the point that Rivera was willing to deal with him and Solis -- a person Rivera did not know -- to sell three kilograms of cocaine. The defendants' claim here is that the robbery's object (the theft of multiple kilograms of cocaine from a drug dealer) and/or result are insufficient as a

---

[4]If the evidence regarding an omitted element is overwhelming but controverted, we have "conduct[ed] a two-part inquiry, searching the record in order to determine (a) whether there was sufficient evidence to permit a jury to find in favor of the defendant on the omitted element, and, if there was, (b) whether the jury would nonetheless have returned the same verdict of guilty." United States v. Guevara, 298 F.3d 124, 127-28 (2d Cir. 2002) (citations omitted).

13

matter of law to constitute the requisite effect on interstate commerce.  We disagree.

It hardly needs repeating that the reach of the Hobbs Act is coextensive with the full reach of Congressional power over commerce, see Stirone v. United States, 361 U.S. 212, 215 (1960), and that only "a very slight effect on interstate commerce" need be shown.  See United States v. Wilkerson, 361 F.3d 717, 726 (2d Cir. 2004); see also 18 U.S.C. § 1951(a).  Indeed, "[e]ven a potential or subtle effect on commerce will suffice."  United States v. Angelilli, 660 F.2d 23, 35 (2d Cir. 1981).  In drug trafficking cases, the requisite effect on interstate commerce can be found either in the importation or interstate transportation of drugs or even in the trafficking of particular drugs in a "small but going enterprise" that handles product almost exclusively transported into the United States from outside the country and very little of which is produced in New York.  See Parkes, 497 F.3d at 231; see also United States v. Vasquez, 267 F.3d 79, 87-88 (2d Cir. 2001).  While making it clear that it was not deciding the issue, the Court in Parkes said in a footnote: "It may well be that a rational jury could conclude that the interstate commerce element is satisfied by proof that a robbery targeting drugs or proceeds of a drug business that is purely intrastate."  Parkes, 497 F.3d at 231 n.10.  Parkes also reminds us that "[t]he required evidence of an

14

effect need not take any particular form or be offered in any particular quantum -- direct, indirect, or circumstantial evidence could suffice.  It is a case-by-case inquiry." Id. at 231 n.11.  Similarly, in Vasquez, a plain error case, we expressly held that heroin trafficking "affects interstate commerce, at the very least, regardless of where the raw materials originate" and that any error in relevant jury instructions regarding the commerce element could not have affected the fairness, integrity, or public perception of the proceeding, much less have amounted to a miscarriage of justice. Vasquez, 267 F.3d at 90 (emphasis in original).  Indeed, Parkes itself held that a robbery of marijuana and $4000 in drug proceeds, along with direct expert testimony, was sufficient to establish the requisite nexus to interstate commerce.  Parkes, 497 F.3d at 231.

The only evidence even arguably lacking was direct testimony of an expert nature that cocaine is imported into the United States[5] and/or that any robbery of cocaine, wherever the source, affects interstate commerce.  Such expert testimony is unnecessary because a reasonable juror is surely capable of drawing the conclusion that a robbery undertaken with the object of stealing from a drug dealer three kilos of cocaine -- and

---

[5]Parkes involved marijuana, 497 F.3d at 225, which can be grown in the United States.  Cocaine is exclusively foreign in origin.

15

which successfully yielded one kilo (i.e., a thousand grams or multiple thousands of doses of cocaine) -- would have had at least the required <u>de minimus</u> effect on interstate commerce. <u>See</u> <u>Wills v. Amerada Hess Corp.</u>, 379 F.3d 32, 46 (2d Cir. 2004) (expert testimony unnecessary in cases where jurors "are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training" (quoting <u>Salem v. U.S. Lines Co.</u>, 370 U.S. 31, 35 (1962)). The importation and interstate transportation of cocaine, as well as the financial size of the cocaine trade, have been routinely and copiously discussed by public officials, candidates for office, and the news media for decades. In addition, even the commercial effect of home-grown drugs, which by reason of that origin distinguish them from cocaine, has been described by the Supreme Court as "visible to the naked eye," <u>Gonzales v. Raich</u>, 545 U.S. 1, 28-29 (2005), such that we would infer an effect on interstate commerce from purely domestic production. Certainly, as <u>Vaquez</u> held, the absence of such expert testimony would not constitute plain error. <u>See</u> 267 F.3d at 87-90.

The analysis of proof of effect on interstate commerce is a case-by-case inquiry, <u>Parkes</u>, 497 F.3d at 231 n.11, and such proof need only demonstrate "a potential or subtle effect" on interstate commerce. <u>Angelilli</u>, 660 F.2d at 35. Based on the

16

facts presented to the jury in this case, we find beyond a reasonable doubt that the jury would have returned the guilty verdict even absent the instruction that was given. See Jackson, 196 F.3d at 386. For that reason, we hold that the error in the jury instruction was harmless.

Finally, although for the reasons stated we find no plain error in the charge given, even if we were to determine that such error existed, we would be hard pressed to find that the error created an injustice. The lack of injustice is underlined by the fact that the instructions were not challenged and the issue of the sufficiency was preserved only by a general motion at the close of the government's case in which the words "interstate commerce" were conspicuous by their absence. The timing and general non-specific nature of the challenge is understandable. Before verdict, any issue could have been quickly and indisputably resolved, see Parkes, 497 F.3d at 231, destroying any value on appeal.

We therefore overturn the vacating of the Hobbs Act counts.

b) Sufficiency of the Evidence for the Section 924(c) Count

There was no evidence that Gomez carried a weapon during the robbery. However, he was charged with, and convicted of, aiding and abetting a violation of Section 924(c), and, under 18 U.S.C. § 2, he is punishable as a principal. Relying on United States v. Medina, 32 F.3d 40 (2d Cir. 1994), Gomez challenges his

17

Section 924(c) conviction. Medina held that "a defendant who is not present [at the crime] . . . cannot be said to aid and abet the use or carrying of a firearm simply by aiding and abetting the overall enterprise in which the firearm is employed." Id. at 47. Gomez argues in the present matter that the evidence tying him specifically to the use of firearms, as opposed to showing merely his general involvement in the robbery, was legally insufficient. We disagree.

It is clear from the facts in Medina that the words "not present [at a robbery]" described a participant who was geographically distant from the crime and played no supportive role as the robbery took place. Here, by contrast, Gomez was "present" as a lookout at the scene and played a critical supportive role in the armed robbery. Accordingly, there was easily sufficient evidence to convict Gomez for aiding and abetting on the Section 924(c) count.

c) Jury Instructions on the Section 924(c) Count

A Section 924(c) conviction requires the trier of fact to find that the use of a gun was "during and in relation to any crime of violence or drug trafficking crime." See 18 U.S.C. § 924(c)(1)(A); supra note 3. The predicate crimes alleged here are those alleged in the two Hobbs Act counts and the single cocaine trafficking count. Gomez argues that his Section 924(c) conviction must be vacated because the jury was not instructed to reach a unanimous agreement about which specific predicate crime

18

or crimes were the basis for that conviction. This argument gained force when the convictions on two of the three predicate crimes were vacated.

The failure to instruct the jury that it had to agree on a specific predicate was likely error. See Richardson v. United States, 526 U.S. 813, 818 (1999) (concluding that jury must unanimously agree that defendant is guilty of each of the predicate violations that together constitute a continuing criminal enterprise under 21 U.S.C. § 848); compare 18 U.S.C. § 924(c) (referring to predicate "crime[s]"). Again, however, there was no objection at trial, and plain error review applies. See Santana-Madera v. United States, 260 F.3d 133, 139 (2d Cir. 2001).[6] Indeed, a Richardson error is essentially an omitted element -- in this case the requirement that each juror agree on the predicate crime. See id.; see also United States v. Brown, 202 F.3d 691, 699 (4th Cir. 2000). The analysis we undertake here is similar to that which we have already undertaken with respect to the defendant's claim regarding the interstate commerce element. When an alleged error relates to an omitted element of a jury charge, it is reviewed for harmlessness. And

---

[6] In Santana-Madera, this Court concluded that a Richardson error was not a "structural error," i.e., a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." 260 F.3d at 139 (citing Arizona v. Fulminante, 499 U.S. 279, 310 (1991)). As a result, we concluded that Richardson errors are subject to harmless error review. See 260 F.3d at 139.

19

if an error is harmless, then none of the defendant's "substantial rights" will have been affected and the error is therefore not "plain." Following Neder, therefore, we ask, "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" Neder v. United States, 527 U.S. 1, 18 (1999).

The answer is obviously yes. Whatever force Gomez's argument may have had when the Hobbs Act convictions were vacated vanishes now that they have been reinstated. Because the jury validly reached a unanimous guilty verdict on every predicate crime alleged, the erroneous jury instruction was necessarily harmless. Accordingly, the Section 924(c) conviction stands.

d) Element vs. Sentencing Factor for the Section 924(c) Count

Title 18 U.S.C. § 924(c) provides a scale of differing mandatory minimum sentences depending on whether the gun in the crime was merely used, was brandished, or was actually discharged. See supra note 3. Gomez is exposed to this scale because of his conviction as an aider and abettor punishable as a principal under 18 U.S.C. § 2.

Gomez argues that the application of a particular mandatory minimum based on the facts of the crime is an element of the crime that should therefore have been determined by the jury. See United States v. Booker, 543 U.S. 220, 244 (2005). Gomez acknowledges that a Supreme Court decision is directly to the

20

contrary. See Harris v. United States, 536 U.S. 545, 567-70 (2002). In Harris, a plurality of the court, and Justice Breyer in concurrence, agreed that facts that trigger a mandatory minimum sentence are not elements of the crime but are rather sentencing factors of the sort that a judge may properly find. Id. Indeed, Harris explicitly considered Section 924(c). Id.

Gomez contends that Harris has been undermined by subsequent Supreme Court decisions such as Booker, 543 U.S. at 244 (holding that any fact necessary to support a sentence exceeding the maximum authorized by the facts established by a jury verdict must be proved to a jury beyond a reasonable doubt). However, we must still follow Harris. The Supreme Court has held that "if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." Agostini v. Felton, 521 U.S. 203, 237 (1997) (citation and alteration omitted) (quoting Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484 (1989)). Moreover, our Court has applied Harris even after Booker. See e.g., United States v. Estrada, 428 F.3d 387, 389 (2d Cir. 2005) (relying on Harris to conclude that prior narcotics convictions that triggered a mandatory life sentence were not required to be proved to a jury beyond a reasonable

doubt). Accordingly, Harris still governs, and the Section 924(c) enhancement can properly be found by the sentencing court.

e) Section 924(c): Use or Discharge

The government cross-appeals from the district court's holding that Gomez and Reyes are subject only to the five-year minimum sentence for use of a firearm rather than the ten-year enhancement for discharge. See 18 U.S.C. § 924(c)(1)(A); supra note 3. The district court concluded that because there was evidence that only one gun was discharged but two guns may have been used in the crime, it was unclear which gun or guns the jury relied upon in convicting under Section 924(c). We disagree.

Although the jury was not asked to make a specific finding regarding which gun or guns it was relying upon, Solis's discharge of a gun is undisputed. Apart from that murderous discharge -- the effect of which proved the use of a gun beyond any doubt -- the evidence of the use of guns consisted of DeJesus's testimony as to Solis and Reyes adjusting their waistbands, Reyes's post-arrest statement, and the necessity of weapons in such a robbery. We believe it obvious that the undisputed evidence that Solis killed Rivera with a gun was a foundation for the jury's Section 924(c) conviction. We see no possibility that the jury would have disregarded this undisputed fact to consider in its deliberations over the gun-use element whether Reyes had a gun. We therefore order resentencing of

22

Gomez and Reyes.

f) <u>Uncharged Robbery as Sentencing Enhancement</u>

Gomez argues that the district court improperly enhanced his sentencing range by four levels based on his alleged robbery of 1.5 kilograms of heroin. Gomez makes several attacks against the procedure used by the district court, but each is meritless. In particular, Gomez argues that the district court should not have relied on DeJesus's trial testimony. However, we have said, "The sentencing court's discretion is largely unlimited either as to the kind of information it may consider, or the source from which it may come . . . . A sentencing court is free to consider hearsay evidence, evidence of uncharged crimes, dropped counts of an indictment and criminal activity resulting in acquittal in determining sentence." <u>United States v. Sisti</u>, 91 F.3d 305, 312 (2d Cir. 1996) (citations and quotation marks omitted).

Gomez argues that he should have been given an opportunity to cross-examine DeJesus at sentencing. The district court did not abuse its discretion, however, given that Gomez's trial counsel had an opportunity to cross-examine DeJesus at trial. <u>See</u> <u>United States v. Williams</u>, 247 F.3d 353, 359 (2d Cir. 2001) (sentencing court under no duty to conduct "full-blown evidentiary hearing") (quoting <u>United States v. Prescott</u>, 920 F.2d 139, 143 (2d Cir. 1990)); <u>United States v. Harris</u>, 38 F.3d 95, 98 (2d Cir. 1994) (court found without merit defendant's objection to lack of opportunity to cross-examine witnesses

23

testifying at sentencing hearing where defendant "conced[ed] that defendants have no right to confrontation at sentencing" and "cite[d] no authority to support his claim that the defendant has a right to cross-examine witnesses called to testify").

Gomez also argues that it was unfair to rely on DeJesus's trial testimony as evidence at sentencing because the trial testimony had been admitted only for a limited purpose: namely proof of intent under Federal Rule of Evidence 404(b). The evidence admitted at trial for the purpose of demonstrating Gomez's intent with respect to the robberies was relevant at trial only if the jury also found that the robberies had actually occurred. Likewise, the testimony regarding Gomez's intent was relevant at sentencing only if the robberies had occurred. Therefore, the testimony was admitted at trial for the same purpose for which it was used at sentencing.

Gomez further argues that it is simply improper for a district court to find facts at sentencing. This argument is squarely contradicted by Crosby. See United States v. Crosby, 397 F.3d 103, 112 (2d Cir. 2005)(concluding that the sentencing judge is entitled to find all facts relevant to the sentencing).

CONCLUSION

We reverse on the government's cross-appeal, reinstate the Hobbs Act convictions, and remand for resentencing in accord with this opinion. We affirm on Gomez's appeal.