JOSÉ A. CABRANES, Circuit Judge,
dissenting in part and concurring in part:
Through reasoning that can only be described as remarkable, the majority vacates those Hobbs Act convictions in this case that involved marijuana proceeds even though it affirms those Hobbs Act convictions in this case that involved cocaine and heroin proceeds. The basis for this distinction is the majority’s claim that “unlike cocaine or heroin ... marijuana [can] be grown, processed, and sold entirely within New York.” Majority Op. 681. From that claim the majority reasons that a properly instructed jury in this case could have concluded that the alleged robberies — netting over $600,000 in marijuana proceeds — did not “affect ... commerce” and thus did not violate the Hobbs Act. See 18 U.S.C. § 1951(a) (applying to “[w]hoever in any way or degree obstructs, delays, or affects commerce ... by robbery”).
To be clear, I agree with the majority that this case involved an erroneous jury instruction. In 2006, then-District Judge Gerard E. Lynch applied the law of our Circuit as it stood at the time and gave the following instruction regarding the “commerce” element of the Hobbs Act, 18 U.S.C. § 1951: “[I]f you find that the object of the robbery at issue was to obtain illegal drugs or money earned from the sale of illegal drugs, this element is satisfied.” Robles App. 265-66. I agree with the majority that, following our decisions in United States v. Parkes, 497 F.3d 220 (2d Cir.2007), and United States v. Gomez, 580 F.3d 94 (2d Cir.2009), which changed the law of our Circuit while this appeal *686 was pending, we must now regard Judge Lynch’s instruction as error.[1]
Unlike the majority, however, I would not, as result of the error, vacate any of the Hobbs Act convictions presented for our review. For each conviction, I have no trouble concluding “beyond a reasonable doubt that the jury would have returned the guilty verdict even absent the instruction that was given.” Gomez, 580 F.3d at 102. “For that reason,” I would “hold that the error in the jury instruction was harmless.” Id. Respectfully, therefore, I dissent insofar as the majority vacates the so-called substantive robbery and attempted robbery Hobbs Act convictions (i.e., Counts Two, Six, and Seven).[2]
I.
I disagree with the majority’s reasoning on two grounds. First, I reject the majority’s premise that there was any possibility that the jury in this case could have concluded that the robberies at issue involved marijuana that was “grown, processed, and sold entirely within New York.” Majority Op. 681. In Gomez we faced a similar situation and determined that a “reasonable juror,” relying on his or her lay knowledge and common sense, was “surely capable of drawing the conclusion that a robbery undertaken with the object of stealing from a drug dealer three kilos of cocaine ... would have the required de minimis effect on interstate commerce.” 580 F.3d at 102. It is no different in this case, where the robberies targeted marijuana. Even if marijuana can be grown in New York, the marijuana sold in New York is “almost exclusively” imported from abroad. Parkes, 497 F.3d at 231 (quoting an expert witness’s testimony).[3] Thus it would take nothing short of divine intervention for a robbery involving hundreds of thousands of dollars of marijuana proceeds to fail to recover at least some money derived from the interstate or foreign drug trade. I am confident, moreover, that jurors could — and without question would — -reach that conclusion based on their lay knowledge and common sense. Gomez, 580 F.3d at 102. Thus I reject the majority’s premise that a reasonable jury could have concluded that the robberies in this case involved proceeds from exclusively “homegrown” marijuana.
Second, I disagree with the majority’s conclusion even accepting its premise, for I am confident that a properly instructed jury in this case would have found the required effect on commerce even if the jury had assumed that the marijuana in question was “grown, processed, and sold entirely within New York.” Majority Op. 681 (emphasis added). To understand my view, one must examine our Hobbs Act jurisprudence and consider exactly what the jury, “had it been properly instructed,” Majority Op. 680, would have been told about the “commerce” element of the Hobbs Act.
The Hobbs Act provides as follows:
*687 Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
18 U.S.C. § 1951(a) (emphasis added). The Act contains an expansive definition of “commerce”:
The term “commerce” means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.
Id. § 1951(b)(3) (emphasis added).
A properly instructed jury, therefore, would be told that, to convict on a Hobbs Act robbery count, it must find that the robbery in question had an effect on “commerce over which the United States has jurisdiction.” 18 U.S.C. § 1951(a)-(b). Under Parkes and Gomez, the jury would be told that it is required to make an “independent finding” about whether there was an effect on commerce; the jury would not be told that an effect on commerce is automatically established if the jury finds that the robberies targeted drug proceeds.
To explain the meaning of “[e]ffect,” the jury would be told, under our precedents, that “only ‘a very slight effect on interstate commerce’ need be shown.” Gomez, 580 F.3d at 101 (quoting United States v. Wilkerson, 361 F.3d 717, 726 (2d Cir. 2004)); accord Parkes, 497 F.3d at 230 (“[T]he required showing of an effect on interstate commerce is de minimis.”). The jury would also be instructed that, in order to convict, it need not find an actual effect on commerce, for “ ‘[e]ven a potential ... effect on commerce will suffice.’ ” Gomez, 580 F.3d at 101 (emphasis added) (quoting United States v. Angelilli, 660 F.2d 23, 35 (2d Cir.1981)). Finally, the jury would be told that the government can establish the required “effect” through any kind of proof — not only could direct or indirect evidence be used to establish an effect on commerce, but “ ‘circumstantial evidence could [also] suffice.’ ” Id. (quoting Parkes, 497 F.3d at 231 n. 11).
To explain the meaning of “commerce,” the presiding judge would be mindful that we have repeatedly held that the Hobbs Act’s definition of “commerce” is “coextensive with the full reach of Congressional power over commerce.” Id. (emphasis added); see also 18 U.S.C. § 1951(b) (defining “commerce” to include “all ... commerce over which the United States has jurisdiction”); Parkes, 497 F.3d at 230 n. 8 (“[T]he reach of the Hobbs Act is ‘coextensive with that of the Commerce Clause of the United States Constitution.’ ”) (quoting United States v. Elias, 285 F.3d 183, 188 (2d Cir.2002)). If it is appropriate, therefore, and if it is requested by one of the parties, the presiding judge could explain to the jury some of the basic concepts of Congress’s authority under the Commerce Clause.
That would be particularly apt in a case like this one, where, following Parkes and Gomez, the jury is required to make an independent finding about whether a robbery targeting marijuana proceeds affects “commerce over which the United States has jurisdiction.” 18 U.S.C. § 1951(a)-(b). Indeed, the law regarding Congress’s authority under the Commerce Clause is par *688 ticularly well settled' — and easy to explain to a jury — with respect to commerce involving marijuana, as the Supreme Court has held that Congress’s authority to regulate marijuana under the Commerce Clause is virtually unlimited. See Gonzales v. Raich, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005). Of particular relevance to this case, a properly instructed jury would be told that “commerce” for purposes of the Hobbs Act — that is, “commerce over which the United States has jurisdiction,” 18 U.S.C. § 1951(b) — encompasses marijuana that is grown, processed, and sold entirely within a single state. See Raich, 545 U.S. at 5, 22, 125 S.Ct. 2195 (holding that “the scope of Congress’ authority under the Commerce Clause” includes “the power to prohibit the local cultivation and use of marijuana”).
I recognize, of course, that Raich addressed the Controlled Substances Act (CSA), 21 U.S.C. § 801 et seq., which differs from the Hobbs Act in that it does not contain a jurisdictional “commerce” element to be found by the jury. That does not mean, however, that Raich has no bearing on the definition of “commerce” in the Hobbs Act. See Majority Op. 683. To the contrary, as I note above, we have repeatedly held that “the reach of the Hobbs Act is ‘coextensive with that of the Commerce Clause of the United States Constitution.’ ” Parkes, 497 F.3d at 230 n. 8 (quoting Elias, 285 F.3d at 188).[4] Therefore, all decisions that delineate the scope of the Commerce Clause also delineate the scope of the Hobbs Act. Raich, in particular, explains that Congress’s authority under the Commerce Clause in-eludes the power to regulate marijuana that is grown, processed, and sold entirely within a single state. Accordingly, the term “commerce” in the Hobbs Act— whose “reach” is “coextensive” with the Commerce Clause, Parkes, 497 F.3d at 230 n. 8 — includes purely “homegrown” marijuana.
In sum, under Parkes and Gomez, a properly instructed jury in this case would not have been told, as the jury was erroneously told here, that “if [it] found that the object of the robbery at issue was to obtain illegal drugs or money earnings from the sale of illegal drugs, [the ‘commerce’] element is satisfied.” Robles App. 265-66. Instead, the government could have requested — and Judge Lynch could and should have given — additional jury instructions that painted a fuller picture of the law regarding the Hobbs Act “commerce” element. Thus Judge Lynch would have told the jury, among other things, the following:
(1) In order to convict on a substantive Hobbs Act robbery count, you, the jury, must make an independent finding that the robberies at issue had an “effect” on “commerce.” 18 U.S.C. § 1951(a); Gomez, 580 F.3d at 100; Parkes, 497 F.3d at 230.
(2) The required “effect” on commerce need only be “very slight” and can be “potential” rather than actual. Gomez, 580 F.3d at 101; Parkes, 497 F.3d at 230.
(3) “Commerce” for these purposes includes “all ... commerce over which *689 the United States has jurisdiction.” 18 U.S.C. § 1951(b).
(4) The United States’ jurisdiction over commerce encompasses marijuana that is grown, processed, and sold entirely within a single state. Raich, 545 U.S. at 5, 22,125 S.Ct. 2195.[5]
If the jury in this case had been given those instructions[6] — which are, after all, no more than a summary of well established law — I have no doubt that it would have found that the robberies alleged in Counts Two, Six, and Seven had the required effect on commerce. That is, contrary to the majority’s analysis, I am confident that the jury would have found an effect on commerce simply by virtue of the fact that each of the robberies targeted the proceeds of marijuana sales.
Even accepting the majority’s premise that the marijuana at issue could have been “grown, processed, and sold entirely within New York,” Majority Op. 681, “the local cultivation and use of marijuana” falls within “the scope of Congress’ authority under the Commerce Clause,” Raich, 545 U.S. at 5, 22, 125 S.Ct. 2195, and thus qualifies as “commerce” for purposes of the Hobbs Act, Parkes, 497 F.3d at 230 n. 8 (“[T]he reach of the Hobbs Act is coextensive with that of the Commerce Clause of the United States Constitution.” (internal quotation marks omitted)). If the jury had been properly instructed about that law, there can be no question that it would have found the “commerce” element satisfied, even if it had determined that the marijuana in question was exclusively homegrown.
Accordingly, I have no trouble concluding “beyond a reasonable doubt that the jury would have returned the guilty verdict even absent the instruction that was given.” Gomez, 580 F.3d at 102. “For that reason,” I would “hold that the error in the jury instruction was harmless,” id., and I would affirm the convictions on Counts Two, Six, and Seven.[7]
*690 II.
I hasten to add that I am not arguing that our Court should overturn Parkes or Gomez, for I do not think that we should “dispense with the need for a jury finding that each element of the Hobbs Act has been proven beyond a reasonable doubt.” Parkes, 497 F.3d at 229. Rather, I agree with Parkes and Gomez that a jury in a Hobbs Act prosecution must make an independent finding of an effect on commerce. My point is only that the jury would almost certainly make such a finding even if it determined that the marijuana in question had been grown, processed, and sold in a single state.
Again, following Parkes and Gomez, a jury will no longer be instructed that the “commerce” element of the Hobbs Act is automatically satisfied if the jury finds that the robberies at issue targeted drugs or drug proceeds. Absent that instruction, however, it will become necessary for the jury to have a fuller account of the meaning of “commerce” under the Hobbs Act. In this case, for example, because the government had introduced no evidence that the marijuana at issue had traveled outside New York, the government could have requested — and Judge Lynch should have given — an instruction explaining that the “commerce over which the United states has jurisdiction,” 18 U.S.C. § 1951(b), encompasses “the local cultivation and use of marijuana,” Raich, 545 U.S. at 5, 125 S.Ct. 2195.[8] If that fuller account of “commerce” had been given to the jury, I have no trouble concluding that the jury would have found the “commerce” element satisfied, even if the jury determined that the marijuana in question had been grown, processed, and sold solely in New York.
I acknowledge, furthermore, that my reasoning does imply that in cases like this one — where there was an erroneous jury instruction of the type identified in Parkes and Gomez — the erroneous instruction will almost always be found to be harmless error. But I do not think that this result is inconsistent with Parkes or Gomez. The central holding of Parkes and Gomez is that juries should not be instructed that the “commerce” element is automatically established if the alleged robberies target *691 ed drugs. That holding remains intact even if the erroneous instruction will be found to be harmless in the vast majority of cases, and I am confident that district judges will follow Parkes and Gomez even if it is unlikely that a Parkes-type error would ever lead to a conviction being vacated on appeal.
Moreover, nothing in Parkes or Gomez is inconsistent with the idea that the erroneous instruction identified in those cases will be found to be harmless in nearly all cases. Parkes, after all, suggested in dicta that “a rational jury could conclude that the interstate commerce element is satisfied by proof that a robbery targeted drugs or proceeds of a drug business that is purely intrastate.”[9] Parkes, 497 F.3d at 231 n. 10. Gomez, moreover, concluded that “even the commercial effect of homegrown drugs ... has been described by the Supreme Court as ‘visible to the naked eye,’ such that we would infer an effect on interstate commerce from purely domestic production.” 580 F.3d at 102 (emphasis added) (quoting Raich, 545 U.S. at 28-29, 125 S.Ct. 2195). And even under the majority’s reasoning, we would find harmless error in all Hobbs Act cases involving cocaine or heroin, as the majority reasons that those drugs must, by their nature, travel in interstate commerce. Majority Op. 680.
Finally, I recognize that my reasoning makes the jury’s independent finding of commerce seem formalistic. Under Parkes and Gomez, the jury may not be told that the “commerce” element is automatically established if the robberies at issue involved illegal drugs. But under my reasoning, after the jury is told to make an independent finding on the “commerce” element, the jury should also be instructed on the law of “commerce,” including that the United States’ jurisdiction over commerce encompasses marijuana that is grown, processed, and sold solely within a single state. Those additional instructions on the law of “commerce” make the jury’s independent finding appear to be a formalism, as the instructions make it virtually certain that a rational jury will find the “commerce” element established in every Hobbs Act case involving drugs.
But insofar as my reasoning makes the jury’s independent finding of commerce somewhat formalistic, such formalism is no more than a familiar and long-established feature of our jury system. Parkes changed the law of our Circuit in part because the Supreme Court’s decision in United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), “undid Second Circuit precedent that treated the interstate commerce element of the Hobbs Act as a matter of law for the judge.” Parkes, 497 F.3d at 227. Gaudin held that the jury — not the judge — is required to make a finding on each element of a crime, including those elements, like the “commerce” element of the Hobbs Act, that involve a “ ‘mixed question of law and fact.’ ” 515 U.S. at 512, 115 S.Ct. 2310. Nothing in Gaudin, however, implied that the judge should not instruct the jury on the law. Indeed, Gaudin repeatedly emphasized that, for mixed questions of law and fact, “the judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions.” Id. at 513, 115 S.Ct. 2310; see also id. at 514, *692 115 S.Ct. 2310 (taking guidance from “the 1807 treason trial of Aaron Burr in which Chief Justice Marshall charged the jury that ‘levying war is an act compounded of law and fact; of which the jury, aided by the court[,] must judge[,] ... [and] hav[ing] now heard the opinion of the court on the law of the case[,] [t]hey will apply that law to the facts, and will find a verdict of guilty or not guilty as their own consciences may direct’ ” (some quotation marks omitted; most alterations and emphasis in original)).
A jury’s independent finding, therefore, appears formalistic in cases like this, where one element of a crime is a mixed question of law and fact, and the law that the judge must explain to the jury makes it virtually certain that the jury — if it follows the law — will find the element satisfied, given a certain factual predicate. Here, for instance, the “commerce” element of the Hobbs Act is a mixed question of law and fact, and the law that the judge must explain to the jury makes it virtually certain that the jury will find the “commerce” element satisfied, given a finding that the robberies in question involved drugs. That does not mean, of course, that the judge may take the required finding away from the jury, for criminal defendants in our system have a “historical and constitutionally guaranteed right ... to demand that the jury decide guilt or innocence on every issue.” Id. at 513, 115 S.Ct. 2310. But it also does not mean that the judge should refrain from fully instructing the jury about the law.
Thus, in future Hobbs Act cases, the jury may not be told that the “commerce” element is automatically established if the robberies at issue targeted drugs. That would infringe on a defendant’s right to have the jury “decide guilt or innocence” with respect to the “commerce” element. But the jury can and should be fully instructed about the law of “commerce,” and thus the jury can and should be told that the United States’ jurisdiction over commerce, 18 U.S.C. § 1951(b), encompasses marijuana that is grown, processed, and sold entirely within a single state, Raich, 545 U.S. at 5, 22, 125 S.Ct. 2195.
To summarize: If the jury in this case had been properly instructed regarding the law of the “commerce” element of the Hobbs Act, I have no doubt that it would have found the “commerce” element satisfied, even if it assumed that the marijuana in question was exclusively homegrown. The erroneous instruction, therefore, was harmless, and we should affirm the substantive robbery and attempted robbery Hobbs Act convictions (ie., Counts Two, Six, and Seven).
For those reasons, I respectfully dissent.

. In Parkes, for example, we rejected almost the exact instruction that Judge Lynch gave here, as we held that the district court in that case “properly refused the government's request to instruct the jury that ‘if the object of the robbery is to obtain illegal drugs or money earned from the sale of drugs, the requirement of an effect on interstate commerce is satisfied.’ " 497 F.3d at 230.

. I concur in the remainder of the majority's opinion.

. I acknowledge, of course, that there was no expert witness testimony in this case. Nonetheless, I think that a reasonable juror can be expected to know, based on his or her lay knowledge and common sense, see Gomez, 580 F.3d at 102, that the overwhelming majority of all illegal drugs in New York — including marijuana — comes from out-of-state.

. Furthermore, I am not attempting to draw an “equivalence” between “Congress's broad power to regulate activities affecting interstate commerce” and "the specific jury finding that a particular offense affected interstate commerce, which is required by the Hobbs Act.” Majority Op. 676. Rather, I am arguing that a properly instructed jury would be told that “commerce” as defined in the Hobbs Act includes purely infra-state marijuana sales. It would then be up to the jury to decide whether to make the “specific jury finding that a particular offense affected interstate commerce.” Id.

. In fact, the District Court gave an instruction to the jury that was similar to this. See Robles App. 265. The District Court erred only when it further stated that “if [the jury] found that the object of the robbery at issue was to obtain illegal drugs or money earnings from the sale of illegal drugs, [the 'commerce'] element is satisfied.” Id. at 265-66.

. The majority chides me for "publishing] model jury instructions telling a jury how to resolve a factual issue solidly within its province.” Majority Op. 685. Yet as I discuss in Part II below, the “commerce” element of the Hobbs Act is a so-called "mixed question of law and fact” with respect to which the “judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions.” United States v. Gaudin, 515 U.S. 506, 513, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). Surely the majority is not claiming that the judge should decline to instruct the jury on the law.
But which of my “model jury instructions” is not the law? It is the law that (1) the jury must make an independent finding of "commerce” and that (2) the required “effect” on commerce need only be “very slight” or “potential.” Gomez, 580 F.3d at 100-01. It is also the law that (3) “commerce” includes "all ... commerce over which the United States has jurisdiction.” 18 U.S.C. § 1951(b); see also Gomez, 580 F.3d at 101 (holding that the Hobbs Act's definition of "commerce” is "coextensive with the full reach of Congressional power over commerce ” (emphasis added)). And it is the law that (4) “the scope of Congress’ authority under the Commerce Clause” (i.e., the "commerce over which the United States has jurisdiction”) includes "the power to prohibit the local cultivation and use of marijuana.” Raich, 545 U.S. at 5, 22, 125 S.Ct. 2195. I do not understand why the majority thinks that those established legal principles should be kept from the jury.

. The majority worries that if my understanding of the law were correct, a "robbery targeting $100 from the sale of wheat, gravel, or prescription drugs would all but automatically meet the Hobbs Act’s jurisdictional element, even if the products at issue originated entirely in-state.” Majority Op. 684 n. 7. If *690 that result is troubling, I submit that it is caused by the plain language of a statute with an exceedingly broad scope. See 18 U.S.C. § 1951 (a)-(b) (extending the Hobbs Act to "[w]hoever in any way or degree ... affects commerce ... by robbery” and defining "commerce” as "all ... commerce over which the United States has jurisdiction " (emphasis added)); see also Parkes, 497 F.3d at 230.
In any event, I am not arguing that "a robbery targeting $100 from the sale of wheat, gravel, or prescription drugs would all but automatically meet the Hobbs Act's jurisdictional requirement.” Majority Op. 689 n. 7 (emphasis added). I am arguing that, if a jury were properly instructed about Congress’s authority to regulate even a certain type of intra-state commerce, then we could be confident that the jury would make the required "independent finding” of "commerce” simply by virtue of the fact that the robbery targeted this type of commerce.
It is, furthermore, highly improbable that a federal prosecutor would ever bring a Hobbs Act prosecution based on a robbery of $100 in gravel proceeds. The majority does not seem to understand that, given the extremely low showing required to demonstrate "commerce” for purposes of the Hobbs Act (even under the majority’s constrained reading of our case law), it is mainly the discretion of federal prosecutors (and a lack of federal resources) that prevents countless petty robberies from being prosecuted as federal crimes.

. Of course, as it happened, the government did not request such an instruction, and Judge Lynch did not give such an instruction. But this is only because, under the law of the Circuit at the time, such an instruction would have been superfluous in light of the now-erroneous instruction that told the jury that the "commerce” element was automatically satisfied by a finding that the robberies targeted drug proceeds.

. Given the fact that the robberies in this case netted (or attempted to net) huge sums of money, finding the required effect on commerce was more than just one among equally weighted inferences that the jury “could" make. See Parkes, 497 F.3d at 231 n. 10. Rather, to restate the point, I have no doubt that a properly instructed jury in this case would have inferred the required effect on interstate commerce, even if the jury assumed that the robberies targeted “proceeds of a drug business that is purely intrastate.” Id.