14-79-cr
*United States v. Jordan*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of March, two thousand sixteen.

PRESENT:    ROBERT D. SACK,
            DENNY CHIN,
            RAYMOND J. LOHIER, JR.,
                *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                *Appellee*,

            v.                                          14-79-cr

JOSEPH RAY JORDAN,
                *Defendant-Appellant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE:                   Howard S. Master, Michael A. Levy, Assistant
                                United States Attorneys, *for* Preet Bharara,
                                United States Attorney for the Southern
                                District of New York, New York, New York.

FOR DEFENDANT-APPELLANT:        Joseph Ray Jordan, *pro se*, Terre Haute, Indiana
                                (Michael K. Bachrach, *standby counsel*, New
                                York, New York).

Appeal from the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Following a jury trial in the district court, defendant-appellant Joseph Ray Jordan was convicted of interstate transmission of threatening communications, threatening an internationally protected person, interstate stalking, and witness tampering, in violation of 18 U.S.C. §§ 875(c), 878, 2261A(2), and 1512(b), respectively. Jordan appeals a judgment entered September 17, 2009, sentencing him principally to 480 months' imprisonment. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Jordan raises a host of issues, including: (1) whether the district court's erroneous instruction, in light of *Elonis v. United States*, 135 S. Ct. 2001 (2015), affected his substantial rights, (2) the sufficiency of the evidence, (3) whether the district court erred in evidentiary rulings, (4) misconduct during the prosecutor's summation, (5) the constitutionality of the federal witness tampering statute, (6) violation of his rights to testify and to counsel, (7) the denial of a bill of particulars on the witness tampering count, (8) whether jurors' inquiry into Jordan's note-taking warranted a mistrial, (9) the

2

effect of uncharged conduct evidence on the indictment, and (10) the reasonableness of his sentence. We have considered all of Jordan's arguments and address the only one with arguable merit: the instructional error regarding threatening communications in light of *Elonis*.

In describing the proof necessary to sustain a conviction for transmitting threatening communications under 18 U.S.C. § 875(c), the district court instructed the jury that "[t]he government is not required to prove that the defendant intended the communication transmitted to be threatening." Trial Tr. 902. This instruction was consistent with then-governing law, but was rendered erroneous by the Supreme Court's supervening decision in *Elonis*, 135 S. Ct. 2001. In *Elonis*, the Supreme Court held that a conviction under the threatening communications statute requires more than proof "that a reasonable person would regard [the] communications as threats." *Id.* at 2012. The Court did not specify the *mens rea* required under the statute, but made clear that a simple negligence standard was unconstitutional. *Id.* at 2012-13. The government acknowledges that, in light of *Elonis*, the district court's instruction was in error, but argues that the error was nonetheless harmless.

Where a defendant fails to make a timely objection, we review the instruction for plain error. *See United States v. Nouri*, 711 F.3d 129, 138 (2d Cir. 2013).[1]

---

[1]     Where the source of plain error is a supervening decision, we have previously held that a modified plain error rule applies, under which "the government, not the defendant, bears the burden to demonstrate that the error . . . was harmless." *United States v. Henry*, 325

3

We will overturn a conviction under the plain error rule only if "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights . . . ; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks and alteration omitted) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)). Where the error in a jury instruction is an omitted element, we conduct a harmless error analysis to determine whether the error affected an appellant's substantial rights. *United States v. Gomez*, 580 F.3d 94, 100 (2d Cir. 2009). "In such a case, we 'consider the weight of trial evidence bearing on the omitted element; and if such evidence is overwhelming and essentially uncontroverted, there is no basis for concluding that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Gomez*, 580 F.3d at 100-01 (quoting *United States v. Guevara*, 298 F.3d 124, 126-27 (2d Cir. 2002)). If we conclude that the jury would have rendered the same verdict beyond a reasonable doubt, the conviction will be sustained. *Nouri*, 711 F.3d at 140. If the evidence bearing on the element is controverted, however, "we look to '(a) whether there was sufficient evidence to permit a jury to find in favor of the defendant

F.3d 93, 100 (2d Cir. 2003) (quoting *United States v. Outen*, 286 F.3d 622, 639 (2d Cir. 2002)). The government argues that, to the extent it is necessary to decide the issue, the modified plain error rule is no longer good law under the reasoning of *Johnson v. United States*, 520 U.S. 461 (1997). We have consistently found it unnecessary to decide this issue, *see, e.g., Nouri*, 711 F.3d at 138 n.2, or assumed without deciding that the modified plain error rule still applies, *see United States v. Mahaffy*, 693 F.3d 113, 136 (2d Cir. 2012). It is likewise unnecessary to decide the issue here. Whether the burden lies with the government would not change our view of whether the jury would have returned the same verdict beyond a reasonable doubt.

on the omitted element, and, if there was, (b) whether the jury would nonetheless have returned the same verdict of guilty." *Id.* at 140 (quoting *United States v. Needham*, 604 F.3d 673, 679 (2d Cir. 2010)).

It is clear that the jury would have found Jordan guilty of transmitting threatening communications had it been properly instructed. This result is evident from the jury's other guilty verdicts. The jury was required to find that Jordan acted knowingly, willfully, and intentionally to convict Jordan of Count Two (threatening an internationally protected person) and Count Three (interstate stalking). Because the same evidence of threats that was used to convict on Count One (threatening communications) supported Counts Two and Three, there is no doubt that the jury would have found that Jordan knew that his threatening communications would be viewed as threats.

The government's evidence supporting a conviction for Count One consisted of proof of seven specific threats. Those threats are summarized as follows: (1) around December 2007, Jordan told the victim via telephone that he would kill her and "take her off the planet"; (2) around December 2007, Jordan told the victim's sister and mother via telephone that he would "kill them and wipe all of them off the face of the earth"; (3) around January 2008, Jordan sent a fax to an embassy in the United Kingdom stating that armed individuals were in London and "awaiting [the] right opportunity to get at" the ambassador and her family, possibly with "two AK-47s"; (4)

5

around January 2008, Jordan sent an email to the victim stating that he was "convinced that [she] need[ed] to be rescued" from her aunt, she would be "grab[bed] and whisk[ed] away" when it is "least expected," and there would be "no tolerance for interference from [the ambassador] or her laughable body guards"; (5) around January 2008, Jordan sent a text message to the victim telling her that he was "finally ready" to rescue her and to keep her passport with her at all times because he would "strike" when it was "least expect[ed]"; (6) around January 2008, Jordan sent a text message to the victim telling her that the "day of rescue" was approaching; and (7) around January 2008, Jordan sent a fax to the ambassador stating that "world news that [she would] not like can occur" and that, "[i]n order to be able to go about [her] life in a secure and comfortable manner and without the need . . . for increased security," she must "apologize" and "prove that the young woman is safe." Trial Tr. 898-900.

The last five threats were the same threats supporting Count Two (threatening an internationally protected person). With respect to Count Two, the jury was instructed that it needed to find that the defendant made the threat "knowingly and willfully," and that "[a] threat is made willfully if it is . . . made voluntarily and with the intent that the word[s] be interpreted by the person to whom they are communicated as a true threat." Trial Tr. 903, 906. Jordan was found guilty of Count Two.

The first two threats were part of the evidence supporting Count Three (interstate stalking). With respect to Count Three, the jury was instructed that, to find

6

the defendant guilty, they must find that "the defendant acted knowingly and with the intent to . . . injure, harass, intimidate or cause substantial emotional distress to [the victim] or . . . to place [the victim] in a reasonable fear of her death, serious bodily injury or the death of or serious bodily injury of a member of her immediate family." Trial Tr. 907-08. Jordan was found guilty of Count Three.

Therefore, because the jury determined that Jordan acted knowingly with respect to Counts Two and Three based on the same facts, there is no doubt that it would have found Jordan guilty of Count One as well. *See Nouri*, 711 F.3d at 140.

Moreover, the evidence that Jordan knew that his communications would be interpreted as threats was "overwhelming and essentially uncontroverted." *Gomez*, 580 F.3d at 100 (quoting *Guevara*, 298 F.3d at 127). During his relationship with the victim, Jordan was physically, sexually, and psychologically abusive. After she escaped, Jordan engaged in a months-long campaign of terror and harassment of the victim and her family. His threats were specific, violent, and accompanied by threatening behavior. His own admissions reveal that his communications were intended to be threatening. Among many other things, Jordan created a website -- using the victim's name -- on which he wrote that he had "failed to control [his] emotions," "hurt [the victim], both physically and emotionally," "reacted with anger," and "said foolish things to some members of her family." Trial Tr. 749.

7

On this record, we conclude that the jury would have found beyond a reasonable doubt that Jordan knew his communications would be viewed as threats. Thus, no new trial is warranted. *See United States v. Coppola*, 671 F.3d 220, 247 (2d Cir. 2012) ("[W]e will reverse only where the charge, viewed as a whole, demonstrates prejudicial error.").

We have considered all of Jordan's additional arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk